No. 12,120.

CAMP *v*. THE PEOPLE.

Decided September 24, 1928.

Mr. John I. Palmer, Mr. J. H. Thomas, for plaintiff in error.

Mr. William L. Boatright, Attorney General, Mr. William W. Gaunt, Assistant, for the people.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

An information was filed in the district court of Conejos county which charges that Dave Camp and his wife Nettie Camp bought and received 42 head of sheep, the property of Emelio Rivera, knowing at the time that they had been stolen from the owner by Urbano Muniz, of whom the defendants made the purchase, and Daniel Quintana. The jury found both defendants guilty and stated the number of sheep stolen to be 42 head as charged, and their value to be $336. In the verdict the jury recommended to the court "to extend extreme leniency to the defendants Dave Camp and Nettie Camp." The court sentenced the defendant Dave Camp to the penitentiary for a term of not less than one year nor more than fifteen months and deferred sentence of the defendant Nettie until the first day of the next term of court. Defendant Dave Camp alone is prosecuting this writ of error. The principal errors assigned are to rulings of the court restricting defendant's right of cross-examination of the people's principal witness Muniz, the confessed thief. Only these will be considered as we think reversible error was committed.

The theory of the prosecution, as we read the record, was, and is, that the defendant Dave Camp induced Muniz, who was a minor, to steal sheep and bring them to the Camp farm and he, Camp, would buy them. Muniz testified that Dave Camp said to him: "You get some sheep and bring them here and I will buy them no matter if they are stolen." Muniz testified that this statement was made to him on the 9th or 10th day of December,

1926, and acting thereon he and Quintana went out on the public road, found 20 head of sheep there, drove them to Camp's farm and sold them to the defendants. On the next day the defendant Nettie gave him a check on the purchase price for $30, and on January 24, 1927, a second check for $10, and on January 25, a third check for $30, and later when Muniz was confined in the county jail, the date not being mentioned, a fourth check for $5, a total of $75, being $25 less than the agreed purchase price of $5 per head of the 20 sheep delivered. Muniz testified positively that this one transaction in December, 1926, was the only sale of sheep made by him to defendants, or either of them, at any time, and that no other than the four checks above described were ever given to him by either defendant for sheep bought or for any other purpose.

In her testimony the defendant Nettie testified that in February, 1926, more than eleven months before the time that Muniz testifies that he sold to the defendants the 20 head of sheep, Muniz came to the Camp ranch or farm with two sheep in an automobile and offered to sell them to her. Because of his apparent youth Mrs. Camp hesitated to buy of him, believing him to be a minor, although he said he was twenty-one years of age, and she told him then that she would not buy the sheep without his father's consent. He went away and shortly returned with a writing purporting to be that of his father, consenting to the sale of these sheep, the writing stating that the son was a good boy and that he would bring the money to the father. Mrs. Camp then bought the sheep and paid him for them. Unquestionably this paper writing, purporting to have been signed by the father of Urbano Muniz, was a forgery, the father testifying that he did not sign it, although we do not find in the record that the son Urbano denied that he gave the paper to defendant Nettie as the consent of the father to the sale. There is no question but that the sheep in question were stolen by Urbano Muniz and Quintana and that they were the property of Emelio Rivera. Some of the sheep purchased by the defendants

remained for some weeks or months upon their home farm and some of them upon another ranch property which they owned some distance away. There was no attempt made by defendants to sell them or hide them away or take them to a different part of the country. Some months later when Mr. Rivera, the owner, learned that some of his sheep were at the ranch of the defendants, he came there to see them and the defendants made no objection to the search and examination by Rivera to ascertain if any of his sheep were on their ranch. Later these sheep were found and they were taken from the premises of the defendants to Rivera's own pasture and he still retains them.

Bearing in mind that the people's witness Muniz had testified positively that the transaction in December, 1926, was the only sale of sheep he ever made to the defendants, and that only the four checks, aggregating $75, were given to him, and that the theory of the prosecution was that Muniz, in December, 1926, was induced to go out and steal sheep and bring them to the ranch and that they would buy them, even if they were stolen, we proceed to consider the rulings of the court which we think unduly restricted the defendants in their cross-examination of this witness. After Muniz had testified, as above stated, defendant's counsel, on cross-examination, elicited from him the statement that he had never sold to the defendants any greater number of sheep than the 20 he says that he sold and delivered about the 9th of December, 1926, and that the witness had never brought or left any sheep there which he claimed to have sold to other persons. The court permitted the defendant's counsel on cross-examination of this witness to ask him about the balance of the 42 head, that is, 22 head included in the information about which, up to the time of cross-examination, witness had not spoken, except that he denied by inference that he had sold them to the defendants. The court said that counsel might ask as to the additional 22 head charged in the information which Muniz testified

that he had not delivered to the defendants. When defendant's counsel was attempting to show on cross-examination of Muniz, that he had brought other sheep to the Camp ranch which he said he had sold to the Morgan boys and to others, the court refused to permit defendant's counsel to cross-examine with reference thereto. Whether this ruling was error or not we are not called upon to say since reversible error was committed in another particular which we proceed to consider.

Defendant's counsel produced, in addition to the four checks already mentioned aggregating $75, signed by Mrs. Camp and endorsed and realized upon by the witness Muniz, six other checks drawn by Mrs. Camp and made payable to Muniz and purporting to have been endorsed by him and upon which he obtained money, and attempted to show by the witness that these checks had been given to him by Mrs. Camp for sheep bought by her of him at different times, the first purchase being in February, 1926, long before, as already stated, the transaction of December, 1926, which Muniz said was the only one he had with the defendants. To this attempt on the part of defendant's counsel, the district attorney objected and the court refused to allow any further examination of these six additional checks, except for the purpose of identifying them, the court saying: "You may cross-examine him as to the money he received but not the others." This observation is a little ambiguous, but the court probably meant that the defendant's counsel may examine the witness as to the four checks he cashed amounting to $75 on which he admitted he got the money, but might not cross-examine the witness as to the other checks purporting to have been endorsed by the witness, but which he denied having been endorsed by him or the receipt of money thereon. While it may be true that it was not necessary to a conviction that the prosecution should establish that the entire 42 head of sheep mentioned in the information were stolen by Muniz, and that all of them were sold by the latter to the de-

fendants, who at the time knew they had been stolen, yet it is a singular circumstance that the jury found from the evidence, which does not warrant the finding, that the entire 42 head mentioned in the information were stolen by Muniz and sold and delivered to, and received by, the defendants. And while it is true that the witness Muniz denied having endorsed the six additional checks, the court refused the offer of defendants to introduce these checks with the name of Muniz thereon endorsed showing that the money had been paid thereon. The defendants, therefore, were deprived of their right to have these six additional checks admitted as testimony so that the jury might determine, among other things, whether the signature thereon was that of Muniz by comparing the same with the signatures on the four checks which he admitted that he received from the defendants and which he cashed and realized upon at the bank. This, the right of cross-examination of a witness, is a valuable right of a litigant. While cross-examination is, in a sense, discretionary with the trial court, this discretion is a judicial discretion and must be wisely exercised and cannot be restricted so as to deprive the party invoking the right of the opportunity to test the credibility and the veracity of the witness. If it be true as matter of fact that other sales of sheep by Muniz had been made both before and after the one admitted sale of December, 1926, and that money had been received by him thereon, such fact, if established, would inevitably tend to discredit his veracity. If the endorsement of the witness on these checks was in his hand-writing and he received money thereon, the jury would be authorized to reject his testimony in its entirety and without the testimony of Muniz the jury should not have returned a verdict of guilty, and if such a verdict had been returned it would not have been supported by the evidence. While this court is not disposed to offer facilities for a guilty party to escape punishment for his crime, it cannot, and should not, permit a judgment to stand that is based upon a verdict to which rul-

ings of the trial court, in violation of the legal right of the defendant, have contributed. *Patrick v. Crowe,* 15 Colo. 543, 25 Pac. 985; *Lothrop v. Roberts,* 16 Colo. 250, 27 Pac. 698; *City of Florence v. Calmet,* 43 Colo. 510, 96 Pac. 183.

The judgment is reversed.