THIS is a criminal case in which defendant was convicted of murder of the second degree and sentenced to a term in the penitentiary. He brings the case here for a review of that judgment, and alleges: (1) That the *Page 138 
court erred in giving certain instructions, to the giving of which, however, he interposed no objection; and (2), he asserts that the court committed error in failing to instruct the jury on another point, although he tendered no instruction covering the subject.
[1] As to the first point, "This court has repeatedly held that it will not consider objections to an alleged erroneous instruction unless an objection is made to the specific instruction at the time, to the end that the trial court may have opportunity to pass upon the particular objection urged." Dillulo v. People, 56 Colo. 339, 341,138 Pac. 33; Sarno v. People, 74 Colo. 528, 223 Pac. 41; Blanchard v. People, 74 Colo. 431, 222 Pac. 649; Koontzv. People, 82 Colo. 589, 263 Pac. 19; Grandbouche v.People, 104 Colo. 175, 189, 89 P.2d 577.
[2] As to the second point, no instruction was offered and we have held that, "Mere nondirection in such circumstances is not error." Reagan v. People,49 Colo. 316, 326, 112 Pac. 785; Mow v. People, 31 Colo. 351,361, 72 Pac. 1069; Brown v. People, 20 Colo. 161,36 Pac. 1040.
The foregoing disposes of this review unless considerations of justice require a waiver of the application of the above rules.
The evidence discloses that on the night of November 1, 1930, a box supper and dance were held at Dry Creek school house in Las Animas county, for the purpose of raising money by selling cakes and pies, perhaps other things — auctioning them off — to raise money for the purchase of presents, and providing a Christmas tree for the children at that Christmas time. Fifty or more of the men, women, and children of the district were present. T. B. Winbern, plaintiff in error, to whom we hereinafter refer as defendant, and his two brothers, although not residents of the district, came as uninvited guests with considerable whiskey in their automobile. Before they commenced to dance, defendant, according to the people's evidence, exhibited a knife and expressed *Page 139 
an intention of breaking up the dance and causing trouble. One of the brothers became noisy and boisterous and was finally ejected from the building by the secretary of the school board. In an ensuing scuffle outside, defendant drew his knife and stabbed the secretary in the leg, and, when the latter returned to the school room limping and bleeding, three other men, including Millard Martin, deceased, went outside. Martin was a mere bystander until defendant "walked up and started talking to him." Immediately a fight started between the two, and all three of the Winbern brothers joined in the attack on Martin. One witness testified, "I seen T. B. [defendant] take what I would call, a hop, step and a jump, and he struck Millard Martin here. I heard the lick, and saw the lick. I still thought they were fighting with fists, and Millard [deceased], hollered he was stabbed." Deceased fell with two stab wounds in the back, either one of which would have been fatal. He was carried into the schoolroom, laid on the floor, then later taken to the hospital where he died the next day. After the melee in which Martin was fatally injured, in a fight that followed, others were stabbed and cut by the Winberns, but finally defendant and his brother Vernon went home. A criminal information was filed, charging them with murder of deceased, but before they could be taken into custody they fled to Utah, Idaho, and Oregon, where they lived under assumed names. Finally, after more than thirteen years, they were apprehended, brought back and tried for murder under the information filed against them in 1930. At the trial, questions were propounded to, and answered by, defendant, as follows: "Q. Did you use a knife that night? A. No, sir; I didn't. Q. Carry any gun or a knife? A. No, sir. Q. Did you strike anybody with a knife? A. No; I didn't. Q. Did you have a knife in your hand at any time? A. No, I didn't."
[3, 4] After all the evidence had been presented, and both sides had rested, objections were made to the *Page 140 
court in chambers by both of the able attorneys for defendants, to instruction No. 7, proposed by the court on first degree murder, which said objections were overruled and exceptions allowed. The jury found defendant guilty of murder in the second degree, and a motion for a new trial was filed and overruled. Other counsel bring the case here on error, and complaint is made for the first time concerning instructions given on self-defense. Defendant testified definitely and positively that he had no knife, and that he did not stab deceased. That being true, he has no grounds for complaint as to instructions given on self-defense. Kelly v. People, 17 Colo. 130,29 Pac. 805. While we do not commend the wording of the instructions given on that subject, yet we are satisfied that when all of the given instructions were read and considered together as a whole, the jury was sufficiently advised as to the law of the case and that the court committed no error in giving them. Defendant did not contend that he stabbed deceased in defending himself against joint attack. He, therefore, had no theory of the case which would justify the giving of an instruction on that subject. "It is not error to refuse instructions which are not applicable to any facts or testimony in the case."Jones v. People, 93 Colo. 282, 285, 26 P.2d 103.
[5] Plaintiff in error cites McRae v. People,101 Colo. 155, 71 P.2d 1042, as supporting his contention; but there defendant claimed that deceased met her death by the accidental discharge of a gun; that was his theory of the case and, "it justified an instruction on that theory." Clearly the authority is not in point here. From the testimony introduced upon the trial, the principal question to be determined was: How, and by whom were the fatal wounds inflicted? The court's instructions thoroughly covered that phase of the case. As the court said in Kelly v. People, supra: "There was no substantial error in the charge of the court as given; and no further instructions were prayed in behalf of defendant. It must, therefore, be supposed that the able and vigilant *Page 141 
counsel of defendant considered, that the instructions given were as full and complete in every substantial respect as the evidence would justify."
The defendant appears to have had a fair and impartial trial.
The judgment is affirmed.
MR. JUSTICE ALTER concurs specially.
MR. JUSTICE HILLIARD dissents.